1538

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF WESTERN PENNSYLVANIA: ERIE DIVISION

| | |
|---|---|
| **Nancy E. Lewen, pro se** <br>                           Plaintiff, <br> -against- <br><br> **The Honorable Sandra Edwards Stephens** <br>     Florida Bar License # 384630 <br>     individually and in her official capacity as <br>     Judge of the Fifth Judicial Circuit Court <br>     Marion County Florida. <br> **David Ellspermann, Clerk of the Court** <br> **State of Florida** <br>     Department of Revenue- <br>     Central Child Support Disbursement Unit <br> **Gary M. Finnegan** <br> **Anne Raduns, PA** <br>     Florida Bar License # 669415 <br><br>                       Defendants | Case No. <br><br><br><br><br><br><br><br><br> **10 - 1273** |

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF UNDER 28 U.S.C. § 2201

The Plaintiff, Nancy E. Lewen, filing pro se, alleges as follows against the Defendants:

This case is brought pursuant to:

- 42 U.S.C. § 1983;

- The Due Process Clause of the US Constitution;

- The Full Faith and Credit Clause of the US Constitution;

- 28 U.S.C. § 1738B- Full Faith and Credit for Child Support Orders Act; and

- The Uniform Interstate Family Support Act 2001 (UIFSA).

- 28 U.S.C. § 2201

1

## NATURE OF THE CLAIMS

This civil rights violations case seeks declaratory and injunctive relief from fraud on the Court in an interstate child support modification that was performed in a manner contrary to Federal Interstate Child Support laws.  On May 18, 2006, then Governor Jeb Bush replied through staffer Warren Davis to a desperate email sent to him by the Plaintiff, who was seeking help as a socioeconomically disadvantaged, out of state, pro se litigant against seasoned Ocala, Florida attorneys.  The email was entitled, "I need help and don't know who to ask." Governor Jeb Bush's office **promised** the Plaintiff, *"under Florida law, the court's decision in these cases is based on the best interest of the child or children involved. Judges review all of the information presented to them and apply the law to make their decision."*  In this case, information was ignored and neither state nor federal law was applied. The Mother chose not to obey judgment entered by the Court, choosing instead to temporarily suspend the matter until the youngest child reached majority. Had the Mother obeyed the Court's "best interest of the child," decision on child support issues, the income in the household where the child lived would have been decreased by 50% by withholding order and garnishment orders from the prior tribunal.

The original case number of the referenced Florida case was initially randomly assigned to be heard by the Honorable Raymond T. McNeal, former chair of The Florida Supreme Court Family Court Steering Committee.  After random assignment, the case number was then switched by the Clerk of Court to a case number to be heard by The Honorable Sandra Edwards-Stephens.  While this unethical, non-random re-assignment of court cases may NOT have violated any set rules or laws, a denial of due process of law subsequently occurred in ways specifically addressed almost two decades ago by the 103rd session of Congress of 1993-1994, (Section 2 of Pub. L. 103-383), when establishing the framework for the Uniform Interstate Family Support Act, (UIFSA.)  All children of the referenced case have now reached adulthood, and there are no current child support orders.  The Mother is not seeking child support enforcement in the Federal Court, and is concurrently filing enforcement proceedings in the State of Texas for that purpose.

2

## JURISDICTIONAL BASIS

1. Plaintiff claims federal jurisdiction pursuant to <u>Article III § 2</u> which extends the jurisdiction to cases arising under the U.S. Constitution.

2. Plaintiff brings this suit pursuant to <u>Title 42 U.S. Code § 1983</u> for violations under color of law, of certain protections and legal rights federally guaranteed to her by <u>Article IV Section 1</u>, the <u>Full Faith and Credit Clause of the US Constitution</u>, and the <u>Fourteenth Amendment Due Process Clause of the US Constitution.</u>

## PARTIES

3. At all relevant times, the **Plaintiff, Nancy E. Lewen,** hereinafter referred to as "The Mother," is a US Citizen and legal resident/property owner of: 13 Beech Street Stoneboro, Mercer County, PA 16153, which is in the Pennsylvania Western District. She has applied for Canadian residency status and is currently living at: 48 Rainforest Drive, Brampton, Ontario, Canada, L6R 1B1.

4. **Defendant Sandra Edwards-Stephens** is a Judge who was appointed in May 2000 by Former Governor Jeb Bush to serve on the 5th Judicial Circuit bench presiding at Ocala, Fifth Judicial Circuit Court, Marion County Florida, whose address is: Marion County Judicial Center, 110 NW 1ˢᵗ Avenue, Ocala, FL 34475.

5. **Defendant David Ellspermann** is the Clerk of Court of the Marion County Florida Fifth Judicial Circuit Court, whose address is:  110 NW 1st Avenue Ocala, Florida 34475

6. **Defendant State of Florida Department of Revenue- Central Child Support Disbursement Unit** is the child support enforcement office of the State of Florida, whose address is: 5050 West Tennessee Street, Tallahassee, FL 32399-0100.

7. **Defendant Anne Raduns, PA** is a Florida licensed attorney, formerly in partnership with attorney Robert Appleget, now deceased.  Her address is: 221 NW 4th Street Ocala, FL 34475.

3

**8. Defendant Gary M. Finnegan,** hereinafter referred to as, "the Father," is the ex-husband and father

of the Plaintiff's three adult children. Last known address: 18 Chestnut Place Ocala, FL 34480.

## STATEMENT OF CASE

**9.** The Mother and Father, both Pennsylvania natives, married in 1982 in Allegheny County,

Pennsylvania. Original Divorce Decree containing child support orders was granted on December 1,

1993, Jefferson County, Texas 317th District Court. (Finnegan v. Finnegan, Cause # C-151295.)

**10.** Original Child Support orders were first modified by Texas Court in proceedings brought by the

father, by and through his then attorney, (now the Honorable) Jeffery Shelton in 1995. There is lengthy

history of repeated contempt of child support orders by the Father with enforcement efforts and

subsequent modifications made by the Texas Office Attorney (OAG) when both parties lived in Texas.

**11.** On 9/3/1998, the Texas Court held a hearing on the case, on pleadings presented by the Texas

OAG. The Court confirmed arrears and entered judgment against the Father in the amount of

$15,351.26 at 12% interest as of 8/26/1998. New child support orders were entered for the three

children in the amount of $150/month-current, $155/month-arrears. The Mother dropped the services of

the Texas OAG because the Father was upsetting the young son by showing him OAG paperwork and

pointing out the word "jail." Balance was again confirmed by the Texas OAG on 2/3/1999 in the

amount of $16,826.81, including $775.55 accrued interest.

**12.** There were no further orders from the 317th District Court. The Father made no subsequent child

support payments and obeyed no other Court orders. The Mother obeyed all Court orders regarding

visitation, without regards to the child support evasion and other ongoing abusive issues.

**13.** The Father eventually committed custody interference and interstate concealment of youngest child.

In 2005/2006, the Father filed custody proceedings upon the Mother's discovery of the whereabouts of

the Father and son in Florida. The Father and his attorneys willfully committed extrinsic fraud on the

Florida Court by registering child support orders from a void child support judgment contained in the

4

original Texas Divorce Decree only, without registering subsequent modifications, and failing to

disclose the existence of arrears of approximately $50,000 owed from the Father to the Mother.

**14.** Although a resident of the Commonwealth of Pennsylvania, the Mother willingly submitted to the

jurisdiction of the Florida Court to reconcile all child support orders, in the best interest of the child.

**15.** The Mother, then living in Pennsylvania, was originally served summons from Florida by Sheriff

with the case number 2005-3999-DR-    . No judge had yet been assigned to the case. That case

number was randomly assigned to be heard by The Honorable Raymond T. McNeal, former chair of

The Florida Supreme Court Family Court Steering Committee. The case number was then unethically,

if not unlawfully, switched to case number 2005-4030-DR-FG, to be heard by The Honorable Sandra

Edwards-Stephens instead of The Honorable Raymond T. McNeal, as per original random assignment.[1]

**16.** Florida Code Chapter 88 details the procedure to properly register a child support order, *including*

*any modifications of the order and the amount of any arrears.* Specifically, Florida Code Section

88.6021 states that (1) A support order or income-withholding order of another state may be registered

in this state by sending the following documents and information to the appropriate tribunal in this

state: (a) A letter of transmittal to the tribunal requesting registration and enforcement. (b)Two copies,

including one certified copy, of all orders to be registered, **including any modification of an order.** (c)

A sworn statement by the party seeking registration or a certified statement by the custodian of the

records **showing the amount of any arrearage.** In his annual report, David Ellspermann, Clerk of

Court, states that part of his job is to **"ensure that the court's orders, judgments, and directives**

**are carried out within the parameters allowed by law."** The out of state, pro se Mother's pleading

attempts may have been novice, but should have been enough activity on the docket to sufficiently raise

alarm to a prudent Judge and Clerk of Court that the order had not been registered "within the

---

1In Tripp v. Executive Office of the President, 196 F.R.D. 201, 202 (D.C. 2000), the Court stated, *"The
fundamental rationale for the general rule requiring random assignment of cases is to ensure greater
public confidence in the integrity of the judicial process. The rule guarantees fair and equal
distribution of cases to all judges, avoids public perception or appearance of favoritism in
assignments, and reduces opportunities for judge-shopping."*

parameters allowed by law," in this case, in accordance with Florida Code 88.6021.   The Clerk also

deprived the Mother due process of law in allowing the Father's attorneys to "judge shop."

17. Contrary to Uniform Interstate Family Support Act (UIFSA)  guidelines, no effort was made by the

Florida Court to communicate with the Texas Court or the Texas Office of the Attorney General to

verify the Mother's allegations or evidence of modifications to the original orders and existence of

outstanding arrears.  These actions completely undermine the entire interstate child support system.

18. In 2006, as a courtesy to the Mother during Florida proceedings, the Texas OAG confirmed that

large child support arrears balance still existed. The Mother did not file enforcement proceedings to

garnish the Father's income in Texas at that time, in the best interest of the child, who was then living

with the obligor of the large arrears. The mother had requested the information to place on record as

evidence for proceedings in Florida to reconcile the orders from both Courts, in the best interest of the

child. Custody orders prepared by Attorney Robert Appleget from hearing in May 2006, do allude to

"possibility" of arrears. The Court reserved judgment, requesting further information. In subsequent

final child support hearing on September 8, 2006, although the onus was on the Father, the Mother

provided evidence from the Texas OAG, which was ignored by Judge Sandra Edwards-Stephens.

19. The father claimed that there was no arrears owed from any Texas orders because "the Veteran's

Administration and Social Security Administration had paid off his child support."

20. As responding tribunal, the Florida Court failed to honor the Full Faith and Credit for Child Support

Act [28 U.S.C. § 1738B] and Uniform Interstate Family Support Act 2001 by not enforcing the orders

of the Jefferson County Texas 317th District Court, by acknowledging the voided child support order

only, but *ignoring all subsequent modifications,* and by not verifying either party's allegations.

21.  The Mother was representing herself from out of state against seasoned Florida family law

attorneys Appleget and Raduns who knew, or should have known, the Florida statutory requirements.

The Mother was testifying telephonically and by mail, under extreme mental duress.  The Mother was

unsuccessful at  influencing the Court to recognize federal law or Florida statutes.  During final

6

hearing, in response to the Mother's novice telephonic citation of Federal laws and Florida Statutes, Judge Sandra Edwards-Stephens told the Mother, "take it up with Texas." Knowing that federal law addressed the issues, the Mother did not think that Texas enforcement proceedings to garnish 50% of the Father's income would be in the best interest of the child who was then living with the obligor.

22. On September 8, 2006, Florida child support judgment was entered in chambers against the Mother on orders prepared by Anne Raduns, PA, ignoring arrears of approximately $50,000 owed from the Father to the Mother. These orders also contained fraudulent unsubstantiated child care expenses for a fifteen year old football player. Citing Ninth Amendment Enumerated right to act in the best interest of her child, the Mother temporarily dropped the matter and recently voluntarily approached the Florida Court in a timely manner upon the child reaching majority and graduating high school. Specifically, to right the wrong of the act of fraud on the Court, the Mother filed *Motion to Set Aside Default Judgment* pursuant to Fla. R.C.P. 1.540(5). The mother provided full copies of all orders from both tribunals, and by her signature agreed for the Court to review the case evidence and matters of law, without the Mother's attendance, and right the wrong by setting aside judgment that had modified a vacated order.

23. On September 2, 2010, citing "failure of Movant and Opposing party to appear," Judge Sandra Edwards-Stephens denied the Motion, and willfully condoned this extrinsic fraud and the willful failure of Defendants Finnegan, Raduns, and the late Robert Appleget Esq. to abide by state and federal laws.

24. This act of discrimination and violation of state and federal law prejudices the Mother in a monetary amount of $3,100 fraudulent "child care" expenses, (not including $3,716 interest accrued on child support and child care expenses as of 10/1/2010.) Had Federal UIFSA principles and existing Florida Statutes been followed by reconciling the orders, the Mother's child support obligation should have been ordered to be applied against the Father's outstanding arrears, and NO child care center expenses should have been discretely added into the child support figure by attorney Anne Raduns.

25. These acts of extrinsic fraud and failure to abide by Federal law was not in the best interest of the child or either party. As of October 1, 2010, the Mother is in arrears to the Father from Florida orders

7

in unconfirmed amount of: $19,997.99, including interest. The Father has established that he is willfully in arrears to the Mother from Texas orders in the unconfirmed amount of $96,182.89. Had federal law been applied, and the Mother's child support obligation been applied against the Father's obligation, (without fraudulent child care center expenses,) the Mother would not be in arrears to the Father at all, and the Father would only be in arrears to the Mother in the amount of: $85,055.90 as of October 1, 2010. The Father would also have been credited by the Texas Court these past four years for willfully making timely monthly payments against his large outstanding child support arrears balance, which would have been to his benefit in upcoming enforcement proceedings in Texas.

## PRAYER FOR RELIEF

Wherefore plaintiff prays this Court issue equitable relief as follows:

**1.** Issue Declaratory relief confirming that fraud on the Court was committed by Gary M. Finnegan by and through attorneys Robert L. Appleget Esq and Anne Raduns, PA, Florida License #669415.

**2.** Issue declaratory relief in the form of opinion establishing the lack of constitutionality of the actions of Anne Raduns, PA, Florida Bar License #669415, and The Honorable Sandra Edwards-Stephens, Florida Bar License # 384630, David Ellspermann- Clerk of Court, and State of Florida Department of Revenue- Child Support Enforcement Office while acting under color of law, in failing to abide by Florida Code Chapter 88 and 28 U.S.C. § 1738B, the Full Faith and Credit for Child Support Act, the Uniform Interstate Family Support Act, 2001 (UIFSA) and the Fourteenth Amendment Due Process Clause of the US Constitution. Specifically, the lack of constitutionality involved in re-assigning randomly assigned court cases, the lack of constitutionality involved in domesticating original child support orders to the State of Florida from another state without domesticating numerous subsequent modification orders and ignoring and failing to investigate an out of state pro se litigant's allegations of existence of large child support arrears of approximately $50,000 from the prior tribunal.

8

**3.** Issue injunctive relief compelling Judge Sandra Edwards-Stephens to perform under Federal R.C.P. Rule 60 on the grounds of Rule 60 (b)(5), *the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;* and Rule 60 (d) (3) *This rule does not limit a court's power to set aside a judgment for fraud on the Court.*[2]   Judge Sandra Edwards-Stephens should set aside default judgment and should decline jurisdiction on the grounds of fraud on the Court by Defendants in willfully violating Article IV Section 1- the Full Faith and Credit Clause of the US Constitution, the Fourteenth Amendment Due Process Clause of the US Constitution, and U.I.F.S.A. Sections 317 and 602.[3]

**4.** Issue declaratory relief in the form of confirmation that the Jefferson County Texas 317th District Court holds continuing exclusive jurisdiction in this case regarding all non-modifiable child support obligations and unsatisfied child support obligations pursuant to 28 U.S.C. § 1738B(g).

**5.** Issue generalized declaratory relief to place on record in the State of Texas in the form of confirmation of the garnishability of Social Security Disability Income (SSDI) under 42 U.S.C. 659 and the garnishability of that part of Department of Veterans Affairs service connected disability compensation paid in lieu of waived military retired pay under 5 CFR §581.103(c)(7).   The Mother

---

2 Injunctive relief to set aside the judgment on Federal Rule 60 is consistent with Florida Rules of Civil Procedure  RULE 1.540(b)(5) which states, *"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated...The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding as entered or taken. A motion under this subdivision does not affect the finality of a judgment or decree or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court.*

3 The Father has made no enforcement attempts.  The socioeconomically disadvantaged Mother, who lives 1250 miles from the Florida Court, had voluntarily submitted to the jurisdiction of the Florida Court and made good faith efforts to demonstrate due respect to the Court. The Mother recently voluntarily approached The Honorable Sandra Edwards-Stephens for injunctive relief in a timely manner upon weeks of the child reaching adulthood.  The Mother sought relief without her attendance, entered in chambers, based on objective review of the case and  facts, matters of law, communication with the Court of the prior tribunal or the Texas Office of Attorney General if necessary, to confirm the fraud on the Court. The Mother now approaches the federal Court praying for that same relief.

requests this relief in anticipation of the Father filing appeal either in the Texas Appellate Court or the

Veteran's Administration Office of the Attorney General after garnishment begins on 50% of his

$4,000/month disability income from these federal payor sources.

6. Award Plaintiff costs of litigation and reasonable punitive damages against the party or parties

deemed responsible by this Court for intentionally violating the Mothers federally guaranteed rights.


Respectfully submitted,


Nancy E. Lewen, Plaintiff                                   15 Sept 2010
                                                            Date